IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CUTSFORTH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 17-1025 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| WESTINGHOUSE AIR BRAKE | ) | |
| TECHNOLOGIES CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## CLAIM CONSTRUCTION ORDER

In this patent infringement case, Plaintiff Cutsforth, Inc. ("Plaintiff") alleges that Defendants Lemm Liquidating Company, LLC, formerly known as Fulmer Company, LLC; Westinghouse Air Brake Technologies Corporation; and MotivePower, Inc. (collectively, "Defendants") infringe two of Plaintiff's Patents, United States Patent Nos. 7,141,906 (the "'906 Patent") and 7,990,018 (the "'018 Patent").

The parties filed a Joint Disputed Claim Terms Chart (Doc. 464), identifying four terms requiring construction, on May 17, 2018.[1] On June 20, 2018, the parties presented a technology tutorial to the Court, followed on the same day by a Markman claim construction hearing.

---

[1] The Joint Disputed Claim Terms Chart identified five disputed terms, but the parties filed a Joint Claim Construction Statement (Doc. 476) agreeing that the term "brush catch coupled to the beam" means "the brush catch must be a physical structure that is separate from, and not a subcomponent of, the claimed beam" in the '906 Patent. (Id.) The Court has an "independent obligation to determine the meaning of the claims, notwithstanding the views asserted by the adversary parties." X2Y Attenuators, LLC v. Int'l Trade Comm'n, 757 F.3d 1358, 1365 (Fed. Cir. 2014) (quoting Exxon Chem. Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1555 (Fed. Cir. 1995)). The Court, agreeing with the parties' proposed construction, adopts this construction without change. The Court finds that this construction is supported by the specification. E.g., '906 Patent at col. 7, ll. 43-59 (stating that "FIG. **4**A shows a brush spring **24** coupled to a beam"

To the extent that the lengthy factual and procedural history in this case is immaterial to claim construction, the Court will not discuss this history and will proceed to the merits.

**Legal Standard**

The proper construction of a patent's claims is a question of law. Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S.Ct. 831, 837 (2015) (citing Markman v. Westview Instruments, Inc., 517 U.S. 370, 388-91 (1996)). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The words of a claim "are generally given their ordinary and customary meaning," which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Id. at 1312-13 (citing Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)); Innova/Pure Water, 381 F.3d at 1116). In arriving at this meaning, a court is to look first and foremost to the "intrinsic evidence," which consists of the patent's claim language, the specification and written description, and the prosecution history, to determine the meaning of disputed claim terms. Phillips, 415 F.3d at 1311-17; Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005). The specification is the single best guide to the meaning of a disputed term, and is "usually . . . dispositive." Phillips, 415 F.3d at 1315 (citing Vitronics, 90 F.3d at 1582).

---

in a context indicating that the brush spring is a separate structure, detachable from the beam; and stating that "[t]he beam **14** includes a brush catch notch **56**," indicating that the brush catch is a separate structure that could be attached to the beam via the notch); id. at col. 13, ll. 18-28 ("FIG. **11** illustrates a cut-away view of an illustrative brush-catch mechanism . . . . The surface of the beam **14** . . . includ[es] a guide tab and brush catch notch **56**. . . . A brush catch **110** is engaged with a brush catch spring **112** in the brush catch notch **56**.")

2

"Although the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1571 (Fed. Cir. 1988); see Phillips, 415 F.3d at 1323. Nonetheless, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" Globetrotter Software, Inc. v. Elam Computer Grp. Inc., 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting Vitronics Corp., 90 F.3d at 1583). Even if a patent describes only a single embodiment, the claims of the patent must not be construed as being limited to that embodiment unless the patentee has demonstrated a clear intention to limit the claim scope using "words or expressions of manifest exclusion or restriction." Phillips, 415 F.3d at 1323; Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed. Cir. 2004) (citing decisions); Teleflex, 299 F.3d at 1327. The purpose of the specification is "to teach and enable those of skill in the art to make and use the invention" and sometimes, the best way to do that is to provide an example. Teleflex, 299 F.3d at 1327.

Although the Court of Appeals for the Federal Circuit acknowledges that "the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice," it instructs courts to maintain their focus on how a person of ordinary skill in the art would understand the claim terms. Id. In order to do so, the "claims of the patent must be read in light of the specification's consistent emphasis on [the] fundamental features of the invention." Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306, 1324 (Fed. Cir. 2008).

The prosecution history is another tool that supplies the proper context for claim construction. Home Diagnostics Inc. v. LifeScan, Inc., 381 F.3d 1352, 1356 (Fed. Cir. 2004).

Where an applicant limits claim scope during prosecution through a "clear disavowal of claim coverage, such as an amendment to overcome a rejection," the well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1327 (Fed. Cir. 2003) (citing York Prods., Inc. v. Central Tractor Farm & Fam. Ctr., 99 F.3d 1568, 1575 (Fed. Cir. 1996)); see Omega Eng'g Inc. v. Raytek Corp., 334 F.3d 1314, 1323 (Fed. Cir. 2003). By distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover. Spectrum Int'l v. Sterilite Corp., 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted). In order for the doctrine to apply, however, the prosecution history must show that the patentee clearly, unambiguously and unmistakably disclaimed or disavowed the proposed interpretation during prosecution in order to obtain claim allowance. Schindler Elevator Corp. v. Otis Elevator Co., 593 F.3d 1275, 1285 (Fed. Cir. 2010); Cordis Corp. v. Medtronic AVE, Inc., 339 F.3d 1352, 1358 (Fed. Cir. 2003); Middleton Inc. v. 3M Co., 311 F.3d 1384, 1388 (Fed. Cir. 2002).

Lastly, a district court must resolve the parties' fundamental disputes concerning the scope of claim terms. O2 Micro Intn'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1361 (Fed. Cir. 2008). Yet, courts need not "construe *every* limitation present in a patent's asserted claims." Id. at 1362. Where a claim term with a "plain and ordinary meaning" is disputed, a district court may satisfy its obligation to resolve the parties' dispute by adopting the plain meaning without additional construction, thereby declining to adopt a proposed construction that is "confusing, unhelpful, adds no clarity to the claim language itself, and is erroneous to the extent it attempts to narrow the claims by adding . . . limitations." ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc., 694 F.3d 1312, 1325-26 (Fed. Cir. 2012).

**Disputed Claim Terms**

The parties have asked the Court to construe four disputed claim terms. These terms are:

| Number | Term |
|---|---|
| 1 | "channel" |
| 2 | "projection extending from the mounting block" |
| 3 | "the brush catch includes a spring" |
| 4 | "applies spring force against" |

As the Court will explain in greater detail below, the Court will adopt the following constructions for the disputed terms:

| Number | Term | Construction |
|---|---|---|
| 1 | "channel" | *no construction needed* |
| 2 | "projection extending from the mounting block" | *an element that juts out from the mounting block* |
| 3 | "the brush catch includes a spring" | *no construction needed* |
| 4 | "applies spring force against" | *no construction needed* |

1. *Channel*[2]

The parties' proposed constructions for this claim term are provided in the table below:

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "channel" | A structure defining the path of movement of one part relative to another; i.e., a gutter, groove or furrow | A U-shaped cavity defined by two side walls and a back wall with an opening opposite the back wall that is as wide as the back wall |

The parties dispute the extent to which the term "channel" includes specific limitations as to shape.

As used in asserted claim 1 of the '018 Patent, a "channel" is one subcomponent of "the brush holder component" in the "brush holder assembly." '018 Patent at col. 17, ll. 64-65; id. at col. 18, ll. 4-8. Specifically, the claim recites the term in the following context: "the brush holder component compris[es] a brush box and a ***channel*** for receiving a portion of the mounting

---
[2] Among the asserted claims, this term appears in only asserted claim 1 of the '018 Patent.

block therein, the *channel* including first and second inner side surfaces." Id. at col. 18, ll. 5-8 (emphases added).

The parties agree that, by virtue of the limitations stated in the claim, the channel must include first and second inner side surfaces and must be shaped in a way that allows it to receive a portion of the mounting block. (Defendants' Responsive Claim Construction Brief 7, hereinafter "Def.'s Br.," Doc. 471; Plaintiff's Opening Claim Construction Brief 9, hereinafter "Pl.'s Br.," Doc. 470.) Defendants infer an additional limitation: that the channel must be "U-shaped," that is, "defined by two side walls," "a back wall," and "an opening opposite the back wall that is as wide as the back wall." (Def.'s Br. 7-8.)

Simply, there is nothing in the specification that requires these limitations as to the shape of the channel. To the contrary, the specification discloses that the "channel" need not have a particular shape, so long as the channel's shape allows another component to slide into place:

> FIG. **4**B illustrates the "channel-like" nature of the example beam **14**. The beam **14** is designed so that a lower mount block such as the lower mount block **16** illustrated below in FIG. **14** may be sized and shaped to slide into a channel **68** defined by the beam **14**. The channel **68** allows the lower mount block **16** (FIG. **14**) to have a regular shape, allowing for several mount holes **96** (FIG. **14**) through a solid portion of the lower mount block **16** (FIG. **14**) so that secure attachment of the lower mount block **16** is readily performed.

Id. at col. 9, ll. 7-15 (underline added).[3] This language describes only one example of the claimed invention, but sheds light on the meaning of "channel." The channel in this example allows a lower mount block with a "regular shape" to slide into place. By its ordinary meaning, a shape accommodating a "regular shape" need not be "U-shaped." Defendants' proposed

---

[3] This is the only substantive discussion of the term "channel" in the '018 Patent's specification. The abstract of the '018 Patent states: "In some embodiments the brush holder includes a channel, such that at least a portion of the mounting block is disposed within the channel of the brush holder."

limitation would thus be narrower in scope than the example, and the Court finds that there is no reason to adopt such a narrow meaning. See Vitronics, 90 F.3d at 1583. As Plaintiff argues, other channel shapes, such as "T-shapes," are clearly within the scope of the claim based on the specification's language. (Pl.'s Br. 13-14.) Despite Defendants' argument to the contrary, (Def.'s Br. 10-11), nothing in the prosecution history of the '018 Patent suggests that Plaintiff disavowed the possibility of non-U-shaped channels, and there is no need to resort to extrinsic evidence to resolve this dispute.

As the Court's discussion above resolves the parties' fundamental dispute about shape-based limitations on the term "channel"—there are no such limitations—there is no need to construe that term. The Court's obligation is to resolve fundamental disputes concerning the scope of claim terms, not to construe the meaning of every word in a disputed claim. See O2 Micro Intn'l Ltd., 521 F.3d at 1361. The term "channel" has a plain and ordinary meaning that would be readily understood, in the context of claim 1, by a lay juror. Plaintiff's proposal, while less limiting than Defendants' proposal, "adds no clarity to the claim language itself," ActiveVideo Networks, Inc., 694 F.3d at 1325-26, and it incorporates extrinsic evidence in the form of a dictionary definition into the construction. Because there is no need to construe "channel" to resolve the parties' dispute, the Court declines to adopt a construction for this term.

2. *"Projection extending from the mounting block"*[4]

The parties' proposed constructions for this claim term are provided in the table below:

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
| --- | --- | --- |
| "projection extending from the mounting block" | A projection extending from the mounting block must "jut out from the mounting block" | A component that juts out laterally from the major axis of the mounting block |

---

[4] Among the asserted claims, this term appears in only asserted claim 14 of the '906 Patent.

As is apparent from the above proposals, the parties dispute whether a "projection extending from the mounting block" must jut out in a particular direction from the mounting block. Under Plaintiff's proposed construction, there is no limitation as to this direction, while Defendants' proposal would require that the projection "juts out laterally from the major axis of the mounting block." (Def.'s Br. 14.)

Consistent with the Court's discussion below, the Court finds that the specification provides no support for the limitation that the projection must jut out laterally from the major axis of the mounting block, as opposed to jutting out in another direction.

Claim 14 of the '906 Patent recites "a brush release extending from the mounting block and configured for sliding engagement with the brush catch *said brush release is a projection extending from the mounting block*." '906 Patent at col. 19, ll. 6-9 (emphasis added). The illustrative examples shown in Figures 11 and 12 of the '906 Patent depict a brush release, labeled as "114" in both Figures. Id. at col. 13, ll. 18-20, 28-30, 38-39, 45-50.



**FIGURES 11 & 12 ('906 PATENT)**

Defendants raise several arguments concerning their proposed limitation: (1) Plaintiff emphasized in proceedings before the Patent Trial and Appeal Board ("PTAB") and the Court of

8

Appeals for the Federal Circuit that the projection must jut out or extend out from its surroundings, thus implying the proposed directional limitation; (2) the '906 Patent repeatedly refers to the brush release structure as a "tab," thus implying the proposed limitation; (3) the brush release depicted above in 114, as the only embodiment depicted, limits the claim to the features depicted; and (4) the claim should be limited by the features depicted because these show "the essence of the claimed invention rather than a preferred embodiment," Secure Web Conference Corp. v. Microsoft Corp., 640 F. App'x 910, 915 (Fed. Cir. 2016). (Def.'s Br. 15-17.) These arguments are unpersuasive.[5]

As to the first two arguments, nothing in the nature of "jutting out or extending from surroundings" or being a "tab" implies Defendants' proposed limitation that the direction of the outward extension must be lateral from the major axis of any element. Defendants cite no statement by Plaintiff or line of the '906 Patent's specification that would imply such a limitation. Consequently, the first two arguments are unavailing.

As to the third argument, this misstates the law. To limit a claim to its preferred embodiment requires an "express declaration of the patentee" to this effect. Playtex Prods., Inc. v. Procter & Gamble Co., 400 F.3d 901, 907-08 (Fed. Cir. 2005). No such declaration is present,

---

[5] The parties also argue that the construction adopted by the Federal Circuit supports each of their respective proposed constructions. (Pl.'s Br. 16; Def.'s Br. 17.) Concerning the disputed claim term, the Federal Circuit applied the "broadest reasonable interpretation" standard and narrowed PTAB's construction to specify "that a 'projection extending from the mounting block' must jut out from the mounting block." Cutsforth, Inc. v. MotivePower, Inc., 643 F. App'x 1008, 1009-11 (Fed. Cir. 2016). While this construction is not dispositive under the Phillips standard applied by this Court, this Court's construction certainly can be no broader. See Facebook, Inc. v. Pragmatus AV, LLC, 582 F. App'x 864, 869 (Fed. Cir. 2014) ("The broadest reasonable interpretation of a claim term may be the same as or broader than the construction of a term under the Philips standard. But it cannot be narrower."). As to the additional limitation proposed by Defendants, the Federal Circuit's opinion does not suggest in any way that the projection must also jut out in a direction that is lateral to the major axis of the mounting block. See generally Cutsforth, Inc., 643 F. App'x 1008.

9

and, to repeat, Defendants cite no statements of the patentee or provisions of the specification that would limit the claim to its illustrative examples.

Defendants' fourth argument attempts to show that an exceptional circumstance is present here—namely, that the examples shown in Figures 11 and 12 depict "the present invention" and therefore define the scope of the invention. Honeywell Int'l, Inc. v. ITT Industries, Inc., 452 F.3d 1312, 1318 (Fed. Cir. 2006). Contrary to this argument, the '906 Patent does not include any language restricting the claim to these examples. Rather, the specification states that "[t]hose skilled in the art will recognize that the present invention may be manifested in a variety of forms other than the specific embodiments described and contemplated herein." '906 Patent at col. 18, ll. 9-11; see also id. at col. 3, ll. 54-56 ("The figures . . . depict selected embodiments and are not intended to limit the scope of the invention."); cf. Secure Web, 640 F. App'x at 915 ("[w]e are mindful not to *limit* claims to preferred embodiments, but in this case . . . . the specification describes Figure 1 as depicting 'a communication system according to the present invention'"). As there is no language in the specification suggesting the proposed limitation or describing the relevant figures as the essence of the invention itself, Defendants' fourth argument also lacks merit.

Accordingly, there is no limitation as to the outward direction of the projection. The only limitation implied by "projection extending from" is the limitation—also supported by Figures 11 and 12 above and the specification, see, e.g., '906 Patent at col. 13, ll. 29, 46 (referring to the "brush release tab")—that the projection must "jut out" from (as opposed to recede into) the mounting block. The Court's construction is substantially identical to the one adopted by the Federal Circuit. See Cutsforth, Inc. v. MotivePower, Inc., 643 F. App'x 1008, 1009-11 (Fed. Cir. 2016) ("a 'projection extending from the mounting block' must jut out from the mounting

block"). The Court construes "projection extending from the mounting block" as "an element that juts out from the mounting block."

3. *"The brush catch includes a spring"*[6]

The parties' proposed constructions for this claim term are provided in the table below:

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "the brush catch includes a spring" | No construction needed; ordinary meaning | To the extend this term finds support in the written description of the '906 Patent under 35 U.S.C. § 112,[7] the construction should be "the brush catch is biased by a separate spring." |

As an initial matter, the Court notes that Defendants' proposed construction of "the brush catch includes a spring" contains the terms "the brush catch" and "spring." Defendants do not propose limiting these terms. Rather, the dispute concerns whether the term "includes" should be construed to mean "is biased by a separate" spring, thus limiting the claim to specify that the brush catch and the spring must be separate physical structures, with the spring biasing the brush catch. (Def.'s Br. 19.) Plaintiff opposes this limitation, arguing that the claim is satisfied even if the brush catch and the spring are part of the same physical structure. (Pl.'s Br. 18.)

The '906 Patent contains the following information bearing on whether the brush catch and the spring must be separate structures, or may be part of the same structure.

First, and most significantly, claim 19 uses the word "includes," the ordinary meaning of which encompasses both possibilities. '906 Patent at col. 19, l. 24. The remainder of the specification is consistent with this broad meaning. The specification's description of Figure 11, which "illustrates a cut-away view of an illustrative brush-catch mechanism used in some

---

[6] Among the asserted claims, this term appears in only asserted claim 19 of the '906 Patent.
[7] Any arguments concerning a written description attack are not properly before the Court, and the Court will not address these arguments.

11

embodiments," id. at col. 13, ll. 18-19, states that the Figure depicts a "brush catch **110** [that] is engaged with a brush catch spring **112** in the brush catch notch **56**," id. at col. 13, ll. 27-28. That the brush catch "is engaged with" the spring in this example encompasses both structural possibilities, as a person of ordinary skill would recognize that one component may logically engage with a subcomponent of itself or with a separate structure. Further, the illustration is ambiguous as to whether these elements are part of the same physical structure. (Compare Pl.'s Br. 19 (adding color to suggest that Figure 11 depicts these as one structure), with Def.'s Br. 19 (adding color to suggest that Figure 11 depicts these as two structures).) The specification's description of Figure 12, which illustrates a similar mechanism, states that "[d]uring retraction, the brush catch **110** moves away from the brush release tab **114**, allowing the brush catch spring **112** to press the brush catch **110** to an extended position." Id. at col. 13, ll. 45-48. Again, the fact that the spring "press[es]" the brush catch does not imply that it must be a physically separate structure. Finally, contrary to Defendants' argument, (Def.'s Br. 19), the fact that these elements are independently labeled in the examples, particularly in the context of illustrations depicting overlapping elements with separate functions, hardly suggests that the brush catch and the spring must always be separate physical structures.

As there is nothing in the specification that lends support to Defendants' proposed limitation, the Court finds that the brush catch and the spring may be part of the same physical structure, or may be separate physical structures. Because this finding resolves the parties' dispute, and because the language of the claim term clearly encompasses these possibilities, there is no need for additional construction of this claim term. Any further construction defining the meaning of "includes" would risk adding limitations to the claim that are not present in the

specification and would add no clarity to the claim language itself. See ActiveVideo, 694 F.3d at 1325-26. Accordingly, the Court declines to adopt a construction for this term.

4. *"Applies spring force against"*[8]

The parties' proposed constructions for this claim term are provided in the table below:

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| *"applies spring force against"* | No construction needed; ordinary meaning | To the extent this term finds support in the written description of the '018 Patent under 35 U.S.C. § 112,[9] the construction should be "improves the mechanical connection of the brush holder to the mounting block, without providing any electrical connection." |

Defendants propose limitations to the function of the spring recited in claim 5 of the '018 Patent: they propose that the spring must improve the mechanical connection of the brush holder to the mounting block, but not provide any electrical connection. (Def.'s Br. 21.) Plaintiff opposes these limitations as unsupported by the specification, and argues that this term requires no construction. (Pl.'s Br. 20.)

Defendants' argument rests entirely on the theory that Plaintiff "unequivocally disclaimed a spring that provided or enabled an electrical connection" during *inter partes* review ("IPR"). (Def.'s Br. 21.) Despite this theory, Defendants ultimately fail to show that Plaintiff's repudiation—though present in the Federal Circuit briefing—may be used to limit the scope of claim 5.

---

[8] Among the asserted claims, this term appears in only asserted claim 5 of the '018 Patent, which recites: "The brush holder assembly of claim 1, wherein the mounting block includes a spring that **applies spring force against** at least a portion of the brush holder component when the brush holder component is mounted to the mounting block." '018 Patent at col. 18, ll. 37-38 (emphasis added).
[9] Any arguments concerning a written description attack are not properly before the Court, and the Court will not address these arguments.

To provide relevant context, PTAB initially found, while addressing a challenge to claim 5's patentability, that this claim was unpatentable because it was an obvious modification of prior art references. MotivePower, Inc. v. Cutsforth, Inc., IPR2013-00274, 2014 WL 5661374, at *13 (P.T.A.B. Oct. 30, 2014). However, rather than explain why the relevant modification would be obvious to a person of ordinary skill based on the evidence in the record, PTAB merely stated that the modification was "a matter of design choice" that "would not alter the operation of the modified mounting block." Id. Accordingly, the Federal Circuit vacated PTAB's decision as lacking a sufficient explanation to support a finding of obviousness. Cutsforth, Inc. v. MotivePower, Inc., 636 F. App'x 575, 578-79 (Fed. Cir. 2016). On remand, PTAB found that that then-Petitioner, now Defendant, MotivePower, Inc. failed to carry its burden to show the obviousness of the modification and so PTAB allowed claim 5. MotivePower, Inc. v. Cutsforth, Inc., IPR2013-00274, 2016 WL 5226532 (P.T.A.B. Sept. 9, 2016).

In the course of Federal Circuit briefing, Plaintiff made arguments to explain why PTAB's initial reasoning was insufficient as a matter of law to show that the spring recited in claim 5 of the '018 Patent was simply a design choice without a function. One such argument was that the spring in claim 5 performed a mechanical function, unlike the spring in the prior art reference, which performed an electrical function. (Exhibit O to Defendant's Appendix of Intrinsic Evidence 26-27, Doc. 466-15 ("[t]he '018 Patent assigns an express function to this spring [in claim 5], writing that it helps absorb the compressive and stretching forces that accompany attaching and removing the 'brush holder assembly' from the mounting block.'"); Exhibit N to Defendant's Appendix of Intrinsic Evidence 14, Doc. 466-14 ("Claim 5's 'spring' improves the **mechanical** connection . . . . The '018 patent describes an entirely separate structure . . . that form[s] the **electrical** connection.").) By drawing a clear distinction between

14

the electrical function of the spring in the prior art and the purely mechanical function of the spring in claim 5, Plaintiff clearly implied that the spring in claim 5 could perform no electrical function. (See, e.g., Exhibit N to Defendant's Appendix of Intrinsic Evidence 14 ("the '018 patent describes the importance of separating the electrical and mechanical connections between the mounting block and the brush holder component. . . . the prior art and the claimed structure perform different functions").)

This conclusion does not end the Court's analysis. "The doctrine of prosecution disclaimer attaches where an applicant, whether by amendment or by argument, 'unequivocally disavowed a certain meaning *to obtain his patent*.'" Schindler, 593 F.3d at 1285 (quoting Omega Eng'g, Inc., 334 F.3d at 1384) (emphasis added). The doctrine of prosecution disclaimer is sensitive to context, and the doctrine attaches only when the context demonstrates a clear disavowal of scope to save the particular claim at issue. See MIT v. Shire Pharmaceuticals, Inc., 839 F.3d 1111, 1120 (Fed. Cir. 2016) ("In determining whether a clear and unambiguous disclaimer attaches to particular claim language, it is important to consider the statements made by the applicant both in the context of the entire prosecution history and the then-pending claims."). For example, in MIT v. Shire Pharmaceuticals, Inc., the Federal Circuit held that MIT's unsuccessful attempt to add a limiting amendment to its claims during prosecution could not be used later to limit the scope of its asserted claims because MIT's disavowal was rejected, and was isolated from the process that ultimately allowed MIT's claims. Id. at 1120-21.

A close examination of the context in which Plaintiff made the relevant statements shows that this is not a scenario in which a patent owner limited the scope of a claim during prosecution to gain patent allowance over the prior art. Instead, Plaintiff's argument attempted to clarify the function of the spring in claim 5 in order to show that PTAB's lack of analysis was contrary to

15

law.[10]  The purpose of the argument was *not* to put forward a more limited claim scope to ensure the patent's survival, and the Federal Circuit ultimately reached no conclusion about the relevant limitation, agreeing with Plaintiff that PTAB's reasoning concerning obviousness was legally insufficient.  See Cutsforth, Inc., 636 F. App'x at 578-79.  On remand, PTAB did not address Cutsforth's argument about the separation of electrical and mechanical functions, relying instead on MotivePower's failure to put forward sufficient evidence to prove obviousness.  MotivePower, Inc., 2016 WL 5226532.  Like in MIT v. Shire Pharmaceuticals, Inc., this repudiation was isolated from the process that ultimately determined the patentability of the disputed claim, and was not a factor in allowing the claim over the prior art.  In other words, Plaintiff's disclaimer was tangential to the prolonged negotiation that led to claim 5's allowance.

As a result, even though Plaintiff's Federal Circuit briefs clearly assigned a mechanical rather than an electrical function to the claimed spring, and also distinguished this mechanical function from the prior art's electrical function, the purpose of the argument in context precludes the Court from reading this functional limitation into the '018 Patent.

Defendants do not argue that the specification provides support for their proposed limitation.  (Def.'s Br. 21-23.)  Plaintiff argues that this claim term has a clear meaning, supported by the specification, that requires no further construction.  (Pl.'s Br. 21-23.)  The Court agrees with Plaintiff, and finds that Defendants' proposed limitations are unwarranted.  The '018 Patent supports the ordinary meaning of "applies spring force against," teaching that

---

[10] Specifically, Plaintiff made its argument concerning separate mechanical and electrical functions to refute the idea that the spring in claim 5 was merely a functionless design feature, such that PTAB had no obligation to analyze the evidence on obviousness.  (See Exhibit N to Defendant's Appendix of Intrinsic Evidence 14-15 ("Under *Chu*, when the prior art and claimed structure perform different functions, a finding of obviousness based on a 'design choice' is precluded.  *In re Chu*, 66 F.3d [292, 299 (Fed. Cir. 1995)].").)

> [i]n some embodiments, additional structures **185**, such as one or more Belleville washers, disc springs, or the like, can be disposed . . . to provide a degree of separation force between the upper mount block **20** and the lower mount block **16**. . . . [or to] allow for the adjustment of force needed to put the mount in an engaged position.

'018 Patent, col. 15, ll. 44-63. These references to force, and the adjustment of force, provided by "Belleville washers, disc springs, or the like" further clarify that the disputed claim term has no special or unusual meaning in the specification.

As with the previous claim term, the Court's finding that Defendants' proposed limitations are unwarranted resolves the parties' dispute. And, because the language of the claim term is clear, there is no need for additional construction. Any further construction of "applies spring force against" would risk adding limitations to the claim that are not present in the specification and would add no clarity to the language in claim 5. See ActiveVideo, 694 F.3d at 1325-26. Accordingly, the Court also declines to adopt a construction for this term.

IT IS SO ORDERED.


August 27, 2018                                    s/Cathy Bissoon
                                                   Cathy Bissoon
                                                   United States District Judge

cc (via ECF email notification):

All Counsel of Record