IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CUTSFORTH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 17-1025 |
| v. ) | |
| ) | Judge Cathy Bissoon |
| WESTINGHOUSE AIR BRAKE ) | |
| TECHNOLOGIES CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

Defendants' Motion *in Limine* No. 1 ("MIL 1"), Doc. 612, will be granted, and their Motion *in Limine* No. 2 ("MIL 2"), Doc. 613, will be denied.[1]

## *MIL 1*

In MIL 1, Defendants seek to preclude Plaintiff from presenting any evidence that two non-accused products, i.e., the FC-103 or the GE 2-Pocket Brush Holder, infringe any of Plaintiff's patents—asserted or otherwise. Defendants premise their motion on an explicit determination in the Court's Summary Judgment Opinion ("Summ. J. Op."), Doc. 584, regarding Plaintiff's lost profits damages. Specifically, in rejecting Plaintiff's argument that the FC-103 cannot be considered an acceptable non-infringing alternative because it infringes Plaintiff's patents other than the patents in suit, the Court previously had explained:

> [A]llowing such an argument at this stage—in a case where Defendants actively contest that the new product infringes the other patents—would require a separate proceeding on the merits, including a new round of claim construction, to determine whether a non-accused product infringes the non-asserted patents. While none of the parties' cases on this issue are precisely on point, the Court agrees with Defendants that such a process would be a waste of judicial resources

---

[1] While several other Motions *in Limine* remain pending, this case has been referred Magistrate Judge Lenihan for purposes of mediation and the parties have requested the Court to resolve MIL 1 and MIL 2 prior to mediation.

> and would run contrary to the process envisioned by the Local Patent Rules, as Plaintiff has not moved to amend its infringement contentions to include the FC-103 and the other patents.  Cf. LPR 3.8(b) (Leave of Court is required to amend infringement contentions at this juncture, and leave may be granted only if "the motion is made in a timely fashion, for good cause, and without purpose of delay or undue prejudice to the non-moving party."  Circumstances supporting such leave include the launch of a new product.).  The Court thus finds that Plaintiff may not assert that the FC-103 infringes its unasserted patents for purposes of the Court's lost profits analysis without formally seeking and receiving leave to amend its infringement contentions and committing to the full process that would require.

Summ. J. Op. at 35–36 n.21.

According to Defendants, the same rationale applies equally to the GE 2-Pocket Brush Holder, which one of the Defendants manufactures on behalf of a non-party.  In response, Plaintiff urges the Court to reconsider its determination that only those patents asserted for liability and disclosed in liability contentions are cognizable in the lost profits inquiry under Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152 (6th Cir. 1978).

As an initial matter, the Court notes that it never ruled that—as a general principle—patents used solely for factor two of Panduit must be disclosed via infringement contentions.  Rather, the Court explained that such a procedure was appropriate in this case because "Defendants actively contest that the new product infringes the other patents."  Summ. J. Op. at 35 n.21.  As to reconsideration, the Court will not entertain this request because Plaintiff relies on the same cases that the Court found inapposite at the summary judgment stage.  Compare Pl.'s Br. Opp. MSJ for No Lost Profits (Doc. 581) at 13 (citing Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) and State Industries, Inc. v. Mor-Flo Industries, Inc., 883 F.2d 1573 (Fed. Cir. 1989)), with Pl.'s Resp. to MIL 1 (Doc. 632) at 3 (citing the same cases).

## *MIL 2*

In MIL 2, Defendants seek to exclude the testimony of Plaintiff's expert, Ms. Elizabeth Dean, from testifying as to lost profits at trial.  According to Defendants, her testimony is

irrelevant because it is predicated on the two-supplier theory of lost profits—which no longer is part of this case.

By way of background, at the summary judgment stage, the Court explained that "[i]n defining a two-supplier market, the key consideration remains whether customers for brush holders perceived [Plaintiff's] EASYchange and [Defendants'] FC-101 as the only options for satisfying their desired purposes." Summ. J. Op. at 31. Because "the undisputed facts in evidence indicated that many customers considered options other than the EASYchange and the FC-101 in making their purchasing decisions and, in fact, chose options from more than two suppliers," id. at 30, Defendants were entitled to summary judgment of no lost profits under a two-supplier theory. Id. at 28.

The Court also noted that "Plaintiff's only alternative theory is the Panduit test," and that "[t]he sole prong of that test that the parties dispute is the second one: the absence of acceptable non-infringing alternatives." Id. at 33. After reviewing the summary judgment record, the Court held that "Plaintiff has produced sufficient evidence to demonstrate a reasonable probability of but-for causation of lost profits damages via the lack of acceptable non-infringing alternatives under the Panduit test." Id. at 36. In the Court's assessment, "evidence showing that customers generally valued the advantages of the patented product and that the alternatives lacked those valuable advantages" was sufficient to meet Plaintiff's initial burden. Id. at 34. In so holding, the Court rejected "Defendants' proposal that Plaintiff must affirmatively prove that customers purchased the patented product because of its patented features at summary judgment." Id. The Court explained that "on a motion for summary judgment against Plaintiff, the Court must view the facts in evidence concerning customers' decisions in a light favorable to Plaintiff [,]" but that at trial Defendants "will have an opportunity to argue to a jury that customers purchased the FC-

101 for reasons having nothing to do with Plaintiff's patents, and that the inference of lost profits is unreasonable as to the FC-101." Id.

In MIL 2, Defendants appear to be arguing that the Court was somehow constrained at the summary judgment stage to rule in Plaintiff's favor and that now, before the case is presented to a jury, the Court should rule that Plaintiff actually has not met its initial burden under Panduit. The Court agrees with Plaintiff that this is an improper use of a motion *in limine*.

But more importantly, contrary to Defendants' representations, Ms. Dean's Panduit analysis is not premised on the two-supplier theory of lost profits. To be sure, in concluding that "Plaintiff offers evidence that several alternative holders would be unacceptable," Summ. J. Op. at 36, the Court specifically referenced the expert report of Michael McKinney. See id. (citing Pl.'s Resp. Ex. 2 re No Lost Profits at ¶¶ 115–120). Ms. Dean has incorporated McKinney's report into her analysis. See Dean Report (Doc. 581-1) ¶ 42 ("Michael McKinney addresses the deficiencies in the brush holders Defendants identify as alternative brush holders and concludes . . . that none of these products are acceptable non-infringing substitutes for the products alleged to practice the patents-in-suit.")

For all of these reasons, Defendants' Motion *in Limine* No. 1 (Doc. 612) is GRANTED, and their Motion *in Limine* No. 2 (Doc. 613) is DENIED.

IT IS SO ORDERED.

January 26, 2022
s/Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):
All Counsel of Record